[Cite as *State v. Miller*, 2022-Ohio-2554.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2022CA0013 |
| ERIC MILLER | |
| Defendant-Appellant | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Coshocton Municipal Court, Case No. TRC 2001143 A-C |
| JUDGMENT: | Affirmed in part; Reversed in part; Final Judgment Entered |
| DATE OF JUDGMENT ENTRY: | July 25, 2022 |
| APPEARANCES: | |


| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| RICHARD J. SKELTON<br>Assistant Law Director<br>760 Chestnut Street<br>Coshocton, Ohio 43812 | JAMES J. ONG<br>201 N. Main Street<br>Uhrichsville, Ohio 44683 |

*Hoffman, P.J.*

{¶1}  Defendant-appellant Eric Miller appeals the judgment of the Coshocton Municipal Court convicting him following his plea of no contest to operating a motor vehicle with a prohibited blood alcohol content (R.C. 4511.19(A)(1)(c)), sentencing him to sixty days in jail, and ordering him to pay restitution in the amount of $5,042.06.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}  On November 30, 2020, Appellant was driving a motor vehicle in West Lafayette, Ohio, when he struck a parked vehicle, pushing that vehicle into a yard and causing serious damage to it.   Officer Aaron Carbajal of the West Lafayette Police Department was dispatched to the scene of the automobile accident.  Upon arrival, Officer Carbajal discovered Appellant seated on a curb, being treated by emergency medical personnel.  No other persons were present at the scene who appeared to have been involved in the accident.   The officer asked Appellant if he was alright, and received no response.  The officer did not further question Appellant at the scene and did not conduct field sobriety tests.

{¶3}  Appellant told one of the emergency medical technicians he was driving the car which caused the accident; however, this information was not communicated to Officer Carbajal at the scene.  Although Officer Carbajal never directly asked Appellant if he was driving the vehicle, the officer was present in the back of the ambulance while emergency medical personnel spoke to Appellant about the accident.  When asked how fast he was going, Appellant responded he was going roughly 30 miles per hour.  When the EMT commented he had to be going faster than 30 miles per hour, Appellant asked her if she was a cop.  Officer Carbajal responded, "No, but I am.  And it looks like you

were going faster than that." Supp. Tr. 30-31. Dispatch had also informed the officer Appellant was the registered owner of the car.

{¶4} Appellant was transported by ambulance to the hospital, where his blood was tested as a part of his routine care, and his blood alcohol content was found to be above the statutory limit as set forth in R.C. 4511.19(A)(1)(c). After completing his work at the scene of the accident, Officer Carbajal went to the hospital to speak with Appellant. In reviewing the statements Appellant made to the emergency medical personnel, Appellant confirmed to the officer he had a glass of wine and had taken an Ambien pill prior to the accident. After receiving the toxicology report from the hospital, Appellant was cited for driving while under the influence of alcohol, driving with a prohibited blood alcohol content, and failure to control.

{¶5} Appellant filed a motion to suppress chemical tests, observations and opinions of law enforcement officers regarding his coordination or sobriety, and statements taken from Appellant. The motion proceeded to an evidentiary hearing in the Coshocton Municipal Court, at which the primary issue raised by Appellant was the officer's lack of knowledge Appellant was the operator of the motor vehicle which caused the accident. The trial court overruled the motion to suppress.

{¶6} Appellant entered a plea of no contest to driving with a prohibited blood alcohol content in violation of R.C. 4511.19(A)(1)(c), and the remaining charges were dismissed by the State. Appellant was sentenced to sixty days in jail.

{¶7} Subsequently, a restitution hearing was held in the trial court. Following the hearing, the trial court ordered Appellant to pay restitution to the owner of the parked SUV

he struck in the amount of $5,042.06. It is from the March 14, 2022 judgment of conviction and sentence Appellant prosecutes this appeal, assigning as error:

I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANT'S MOTION TO SUPPRESS, DUE TO THE FACT THAT THE ARRESTING OFFICER DID NOT OBSERVE APPELLANT DRIVING AND THE ARRESTING OFFICER HAD NO INFORMATION BEFORE HIM THAT THE APPELLANT WAS OPERATING THE MOTOR VEHICLE IN QUESTION ON THE DATE OF THE TRAFFIC ACCIDENT.

II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT SUPPRESSING THE TOXICOLOGY REPORT REGARDING APPELLANT'S BLOOD ALCOHOL CONTENT, AS THE ARRESTING OFFICER DID NOT OBTAIN A WARRANT FOR SUCH EVIDENCE AS REQUIRED BY LAW.

II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY ISSUING AN ORDER OF RESTITUTION AGAINST APPELLANT IN THE AMOUNT OF $5,042.06.

I.

**{¶8}** Appellant argues the trial court erred in overruling his motion to suppress because Officer Carbajal did not observe him driving the vehicle, and did not have information before him indicating Appellant was operating the vehicle at the time of the accident.

{¶9} We note at the outset it is unclear what evidence Appellant is attempting to suppress from the alleged lack of knowledge of the officer at the scene of the accident as to whether Appellant was driving the vehicle. The officer did not stop, detain, or cite Appellant at the scene of the accident, nor did the officer conduct any field sobriety tests. As noted by the State, operation is an element of the offense the State would be required to prove at trial, but in the instant case does not appear pertinent to the issues raised in Appellant's motion to suppress.

{¶10} Nevertheless, we find sufficient evidence in the transcript of the suppression hearing from which the trial court could conclude the officer had probable cause to believe Appellant was the operator of the vehicle which caused the accident. Appellant was the only person present at the scene when the officer arrived who appeared to have been involved in the accident, as Appellant was the only person being treated for injuries. The officer was notified by dispatch Appellant was the registered owner of the vehicle involved in the accident with a parked SUV. Jordan Reigel, an emergency medical technician who responded to the accident, testified when Appellant was asked in the ambulance how fast he was going, Appellant responded he was going roughly 30 miles per hour. When Reigel noted it appeared Appellant was going faster than that, Appellant asked Reigel if she was a cop. Officer Carbajal responded, "No, but I am. And it looks like you were going faster than that." Tr. 30-31. While the testimony of Officer Carbajal is at times confusing and contradictory as to when exactly he learned Appellant was driving the vehicle, there was sufficient evidence in the record from which the trial court could determine the officer had information which would give the officer probable cause to

believe Appellant was the driver of the vehicle, even though there were no witnesses to the accident.

**{¶11}** The first assignment of error is overruled.

II.

**{¶12}** Appellant withdrew his second assignment of error at oral argument in this matter on July 5, 2022, and accordingly, the second assignment of error is overruled.

III.

**{¶13}** In his third assignment of error, Appellant argues the evidence presented at the restitution hearing does not support a restitution amount of $5,042.06.

**{¶14}** R.C. 2929.18(A)(1) governs restitution orders:

(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section or, in the circumstances specified in section 2929.32 of the Revised Code, may impose upon the offender a fine in accordance with that section. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that

serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender.

{¶15} We review restitution orders under an abuse of discretion standard. *See, e.g., State v. Sheets,* 5th Dist. Licking No. 17 CA 44, 2018-Ohio-996, ¶ 15; *State v. Cook,* 5th Dist. Fairfield No. 16–CA–28, 2017–Ohio–1503, ¶ 8; *State v. Andrews*, 5th Dist. Delaware No. 15 CAA 12 0099, 2016–Ohio–7389, ¶ 40. An order of restitution must be supported by competent and credible evidence from which the trial court can discern the amount of restitution to a reasonable degree of certainty. *State v. Spencer*, 5th Dist. Delaware No. 16 CAA 04 0019, 2017–Ohio–59, ¶ 44 (Citations omitted). Furthermore, a

trial court abuses its discretion if it orders restitution in an amount that does not bear a reasonable relationship to the actual loss suffered. *Id.* (Citations omitted).

**{¶16}** In the instant case, Kevin Freshwater, the owner of the SUV struck by Appellant, filled out a restitution request form seeking $3,500 for the vehicle itself, and $542.06 for other out of pocket expenses, for a total request of $4,042.06. At the restitution hearing, Freshwater testified he purchased the vehicle for $1200. Tr. 9. He paid $1600-1700 for parts, and was able to do the repair work to the vehicle himself because at one time he owned an auto repair shop. Tr. 10. The victim had an estimate for repair to the damaged vehicle from the person who purchased the victim's auto repair shop. The repair estimate was for $4,394.47 for parts, and $2,970 for labor. Tr. 11. He further had an estimate saying the damage was not reparable due to its severity, and the vehicle was ultimately totaled. *Id.* Because the damaged vehicle was the only vehicle the victim owned capable of driving to Tennessee, the victim's family rented a vehicle to travel for a funeral, which cost $542.06. Tr. 12. In addition, the victim testified he incurred costs of $300-400 for towing and storage of the damaged vehicle before it was totaled. Tr. 18.

**{¶17}** The trial court conducted its own questioning of the victim concerning the replacement value of the vehicle. The victim stated upon questioning he would not take $5,000 for the vehicle, because he had "everything fixed underneath of it." Tr. 30. The victim, upon further questioning from the court, testified he would probably take $6,000 for the vehicle, as he could probably replace the vehicle for $6,000. The victim stated the average price to replace the vehicle through Auto Trader is between $3,400 and $4,000, "and that's all I really want." Tr. 31.

**{¶18}** The trial court found the value of vehicles in Coshocton County was greater than the Blue Book value, and found with the labor put into the vehicle, its restitution value was $4,500. The trial court added the $542.06 rental cost, for a total restitution value of $5,042.06. Tr. 40.

**{¶19}** We find the trial court's restitution value of the vehicle of $4,500 was not supported by the evidence presented at the hearing. While the victim testified he put his own labor into the vehicle, he did not testify as to the monetary value of his labor. Further, there was no evidence presented at the hearing to support the trial court's statements regarding the value of used cars being higher in Coshocton County at the time of the hearing. The victim testified he paid $1,200 for the SUV, and paid $1600-1700 for parts, which, when using the high end of his estimate for parts, supports a finding of $2900 for the amount of money the victim had invested in the vehicle itself. The victim testified he paid $542.06 to rent a car for a funeral in Tennessee, as a direct and proximate result of losing the SUV in the accident. The victim further testified he paid $300-400 for the towing and storage of the totaled SUV, which, again using the high end of his estimate for towing and storage, brings his total out of pocket expenses related to the accident to $942.06. We therefore find the evidence presented at the restitution hearing supports a finding of $3,842.06 in restitution, which amount exceeds the amount of restitution the victim originally requested.

**{¶20}** The third assignment of error is sustained.

**{¶21}** The judgment of the Coshocton County Municipal Court is affirmed in all respects except for restitution. The restitution order is reversed, and pursuant to App. R. 12(B) we hereby enter final judgment of restitution in the amount of $3,842.06.


By: Hoffman, P.J.

Wise, John, J.  and

Baldwin, J. concur